UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN GONZALES,<br><br>    Plaintiff,<br><br>    v.<br><br>CREDIT ONE BANK, N.A.,<br><br>    Defendant. | No. 19-cv-00733-DAD-BAM<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND CLOSING THIS CASE<br><br>(Doc. No. 8) |

This matter is before the court on the motion to compel arbitration filed by defendant Credit One Bank, N.A. ("Credit One") on July 8, 2019. (Doc. No. 8.) The court deemed the motion suitable for decision without a hearing pursuant to Local Rule 230(g). (Doc. No. 13.) The court has reviewed the parties' briefing and for the reasons set forth below, will grant defendant's motion to compel arbitration.[1]

**BACKGROUND**

On May 5, 2019, plaintiff Karen Gonzales ("plaintiff") commenced this action against Credit One, alleging that Credit One placed unauthorized calls to her cellphone apparently seeking to collect on an alleged credit card debt that she owed. (Doc. No. 1 at 3–4.) Plaintiff

---
[1] The court apologizes to the parties for the delay in the issuance of this order.

1

asserts three causes of action against Credit One: (1) a claim brought pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.*; (2) a claim brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*; and (3) a claim alleging invasion of privacy. (*Id.* at 4–6.)

On July 8, 2019, Credit One filed the pending motion to compel arbitration. Credit One argues that, on or about December 10, 2014, it mailed a solicitation letter to plaintiff, inviting her to apply for a Platinum Visa credit card. (Doc. No. 8-1 at 2; *see also* Doc. No. 8-2, Ex. A.) That solicitation letter provided plaintiff with an individualized confirmation number and an approval code that she could use to apply for the Platinum Visa credit card. (*Id.*) The solicitation letter contained notice under the heading "ARBITRATION AGREEMENT" that "[plaintiff] and [Credit One] agree that either . . . may, without the other's consent, require that any dispute between [the parties] . . . be submitted to mandatory, binding arbitration. A more detailed description of this Arbitration Agreement will be sent with your card." (Doc. No. 8-2 at 8.) On December 23, 2014, plaintiff applied for the Platinum Visa credit card using Credit One's website and the individualized confirmation number and approval code that she was provided in the solicitation letter. (Doc. Nos. 8-1 at 3; 8-2 at 4.) Thereafter, a Platinum Visa credit card, along with a copy of a cardholder agreement (the "original cardholder agreement"), was sent to plaintiff. (*Id.*) Neither the Platinum Visa credit card nor the accompanying agreement were returned to Credit One as undeliverable. (*Id.*) Plaintiff activated the Platinum Visa credit card on January 10, 2015 by calling Credit One. (Doc. Nos. 8-1 at 3; 8-2 at 3.)

The original cardholder agreement—titled "VISA/MASTERCARD CARDHOLDER AGREEMENT, DISCLOSURE STATEMENT AND ARBITRATION AGREEMENT"—states that "[b]y requesting and receiving, signing or using your Card, you agree" to the terms of the cardholder agreement, which includes an arbitration provision. (Doc. No. 8-2 at 12.) That arbitration provision is not the arbitration provision that Credit One is relying on to compel arbitration here, as it twice revised its arbitration provision after sending the original cardholder agreement to plaintiff. Credit One was able to do so because the original cardholder agreement contains a section titled, "1. CHANGES IN AGREEMENT TERMS," which notes that Credit

2

One "can change any term of this Agreement . . . or add new terms to this Agreement, at any time upon such notice to you as is required by law." (*Id.* at 12.) That section of the cardholder agreement informed plaintiff that "[i]f you do not wish to be subject to the change, you must notify Credit One Bank . . . prior to the effective date of the change, and close your Account." (*Id.*)

In the fall of 2015, Credit One mailed plaintiff an "IMPORTANT NOTICE," which indicated that changes were being made to the original cardholder agreement, including to the "Initiation of Arbitration" paragraph of the arbitration provision. (Doc. Nos. 8-1 at 4; 8-2 at 3.) It does not appear that plaintiff notified Credit One that she did not wish to be subject to these changes to the agreement, since Credit One contends that it received no such notice from plaintiff (Doc. No. 8-1 at 4), and plaintiff does not contend otherwise.

In the fall of 2018, Credit One mailed plaintiff a revised cardholder agreement (the "operative cardholder agreement"). (*Id.*; *see also* Doc. No. 8-2 at 22–35.) The first page of the operative cardholder agreement notes that "[t]he Arbitration section has been amended to provide the ability to reject the agreement to arbitrate." (Doc. No. 8-2 at 22.) The operative cardholder agreement proceeds to explain "How to REJECT this Agreement to Arbitrate," namely that "[y]ou can reject this agreement to arbitrate but only if we receive from you a written notice of rejection within 45 days after it was first provided to you." (*Id.* at 31.) Again, it does not appear that plaintiff rejected the agreement to arbitrate, since Credit One argues that no notice evincing plaintiff's desire to reject the agreement was provided to it (Doc. No. 8-1 at 4), and plaintiff does not contend otherwise. In relevant part, the arbitration agreement states as follows:

> You and we agree that either you or we may, without the other's consent, require that controversies or disputes between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This agreement to arbitrate is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §[] 1 et seq., and (to the extent State law is applicable), the laws of the State of Nevada . . ..
>
> Covered Claims: Claims subject to arbitration include, but are not limited to, any controversies or disputes arising from or relating in any way to your Account; any transactions involving your Account; any disclosures made to you concerning your Account; any interest,

> charges, or fees assessed on your Account; any service(s) or programs related to your Account; and, if permitted by the rules of the arbitration forum, any collection of debt related to your Account. . .. Claims subject to arbitration include any controversies or disputes based on any theory of law, whether contract, tort, statute, regulation, common law, or equity, or whether they seek legal or equitable remedies. All Claims are subject to arbitration whether they arose in the past, may currently exist, or may arise in the future.

(Doc. No. 8-2 at 29–30.)

On December 13, 2016, plaintiff applied for a second credit card with Credit One, a Mastercard. (Doc. No. 8-1 at 4.) Plaintiff was required to follow the same steps that she had to follow to obtain her Platinum Visa credit card outlined above, and after she did so, she received a second "VISA/MASTERCARD CARDHOLDER AGREEMENT, DISCLOSURE STATEMENT AND ARBITRATION AGREEMENT," which was also subsequently revised by the operative cardholder agreement. (*Id.* at 5.) Credit One argues that the operative cardholder agreement—and the arbitration agreement contained therein—applies to both of plaintiff's credit cards with it (*id.*), and plaintiff does not dispute this point.

In the pending motion, Credit One contends that pursuant to the parties' arbitration agreement, plaintiff must be compelled to arbitrate the claims she has sought to present in this civil action. (Doc. No. 8-1 at 2.) On August 6, 2019, plaintiff filed her opposition to the pending motion, and on August 13, 2019, Credit One filed its reply thereto. (Doc. Nos. 11, 12.)

**LEGAL STANDARD**

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them. 9 U.S.C. § 4. In deciding a motion to compel arbitration, the court "is limited to determining (1) whether a valid agreement to arbitrate exists [within the contract] and, if it does, (2) whether the agreement encompasses the dispute at issue." *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1017 (9th Cir. 2016) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (brackets in original)). Because there is an "emphatic federal policy in favor of arbitral dispute resolution," *Mitsubishi*

*Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631 (1985), "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Id.* at 626 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)).

## ANALYSIS

Credit One contends that the court must compel arbitration because the claims plaintiff is asserting against it in this civil action are within the scope of a valid arbitration agreement to which plaintiff assented. (Doc. No. 8-1 at 6–10.) In opposition, plaintiff does not attack the validity of the arbitration agreement, nor does she contend that her claims against Credit One are not covered by that agreement. Instead, she argues that because she is also asserting claims against "third-party vendors" in this civil action, the arbitration agreement should not be enforced because those third-party vendors are not privy to the arbitration agreement between her and Credit One. (Doc. No. 11 at 2–3.)

**A.     Choice of Law**

Where, as here, a federal court's jurisdiction is based on federal question jurisdiction, "federal common law choice-of law rules apply." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006). "Federal common law follows the approach of the Restatement (Second) of Conflict of Laws." *Daugherty v. Experian Info. Sols., Inc.*, 847 F. Supp. 2d 1189, 1194 (N.D. Cal. 2012) (citing *Huynh*, 465 F.3d at 997).

> Courts honor the parties' choice-of-law to govern their disputed claims unless: (1) "the chosen state has no substantial relationship to the parties or the transaction", or (2) honoring the parties' choice "would be contrary to a fundamental policy of a state that has a materially greater interest" in the dispute. Restatement (Second) of Conflicts of Laws § 187(2) (1988).

*Koby v. ARS Nat'l Servs., Inc.*, No. 3:09-cv-00780-KSC, 2018 WL 707805, at *3 (S.D. Cal. Feb. 5, 2018).

Here, the operative cardholder agreement contains a "Governing Law" provision which states that "[t]h[e] Agreement is [to be] governed by and interpreted in accordance with . . . the

laws of the State of Nevada." (Doc. No. 8-2 at 32.) The court finds that Nevada has a substantial relationship to this dispute since defendant Credit One is based in that state. (*See* Doc. No. 1 at 2.) Moreover, the court finds that honoring the parties' choice of law will not be contrary to a fundamental policy of another state that has a materially greater interest in this dispute, given that (1) plaintiff does not argue that any other state has a greater interest in this dispute and (2) the court is aware of no aspect of Nevada law that affects this dispute that is contrary to the policy of another state.

Accordingly, the court will apply Nevada law in resolving the question of whether a valid arbitration agreement exists between the parties here. *Daugherty*, 847 F. Supp. 2d at 1195 ("Plaintiff has not argued, let alone established that South Dakota law is contrary to a fundamental policy of a state (e.g., California) that would be the state of the applicable law in the absence of an effective choice-of-law by the parties. Accordingly, the Court will apply South Dakota law to resolve the question of whether the arbitration provision is valid.").

**B.      Whether the Parties Entered into a Valid Arbitration Agreement**

Credit One argues that under Nevada law, "an agreement governing a credit card account can be accepted by the consumer's using the card after receipt of the agreement." (Doc. No. 8-1 at 6) (citing Nev. Rev. Stat. Ann. § 97A.140(2) ("A cardholder shall be deemed to have accepted the written terms and conditions provided by the issuer upon subsequent actual use of the credit card.")). To establish that the parties entered into a valid arbitration agreement, Credit One relies on the declaration of Adele Burton, Vice President of Collection at Credit One. (*See* Doc. No. 8-2.) Ms. Burton has attached to her declaration the Premium Visa credit card solicitation letter, the original cardholder agreements, the subsequent notice of change, and the operative cardholder agreement. (*See id.* at Exs. A–E.) Based on this evidence, Credit One contends that plaintiff entered into a valid arbitration agreement because she: (1) received notice of the arbitration provisions before she completed her applications for the credit cards; (2) she received the original cardholder agreements; (3) she assented to the terms of the original cardholder agreements by activating the credit cards; (4) she was provided a notice of changes to the original cardholder agreements and did not reject those changes despite being given an opportunity to do so; (5) the

operative cardholder agreement further provided her with an opportunity to reject the arbitration agreement but she did not do so; and (6) the operative cardholder agreement contained an arbitration agreement. (Doc. No. 8-1 at 7.) Credit One also notes that none of its correspondences to plaintiff were returned to it as undeliverable. (*Id.* at 7.) Plaintiff does not dispute these points based upon the evidence submitted, nor does she dispute the existence of a valid arbitration agreement.

Based on the foregoing, the court finds that plaintiff assented to the terms of the operative cardholder agreement, which contains a valid arbitration agreement.

**C.    Whether the Arbitration Agreement Encompasses Plaintiff's Claims**

The court next evaluates whether the arbitration agreement "encompasses the dispute at issue." *Boardman*, 822 F.3d at 1017. Credit One argues that the broad scope of the operative cardholder agreement's arbitration agreement covers the claims that plaintiff is asserting against it in this civil action. (Doc. No. 8-1 at 9.) The court agrees. In this action, plaintiff alleges that defendant "placed calls" that "were in connection with an alleged credit card debt" and that these calls "w[ere] not authorized." (Doc. No. 1 at 3.) These allegations clearly relate to "controversies or disputes arising from or relating in any way to [plaintiff's] Account" and "any collection of debt related to [her] Account." (Doc. No. 8-2 at 29–30.) As is the case with most of defendant's arguments, plaintiff does not dispute this point either. Accordingly, the court finds that the arbitration agreement encompasses plaintiff's claims against Credit One.

**D.    Plaintiff's Inclusion of Doe Defendants Does Not Affect the Court's Analysis**

Plaintiff's only argument in opposition to the pending motion is that this court should not compel her to arbitrate her claims against Credit One because "Credit One is not the sole defendant to this matter." (Doc. No. 11 at 2.) In effect, plaintiff's position is that because she has included "DOES 1 THROUGH 5" in the caption of her complaint, she has also asserted claims against "co-defendant third party vendors" who did not agree to arbitrate her claims against them. (*Id.* at 3–4.) Plaintiff argues that were this court to require her to arbitrate her claims against Credit One, there is a risk of inconsistent rulings were she to in the future pursue her claims against the third-party vendors in court. (*Id.* at 4.) Plaintiff's argument is not at all persuasive.

7

1 First, that plaintiff's position strains credulity is evidenced by the lack of *any* citation to legal authority in support of that position being presented in her opposition to the pending motion to compel arbitration. Indeed, as one court has noted, "[i]f arbitration defenses could be foreclosed simply by adding as a defendant a person not a party to an arbitration agreement, the utility of such agreements would be seriously compromised." *Hilti, Inc. v. Oldach*, 392 F.2d 368, 369 n.2 (1st Cir. 1968). Second, here, while plaintiff's lists "DOES 1 THROUGH 5" as defendants in this action in the caption of her complaint, she does not otherwise allege any facts against these Doe defendants that would suggest that she actually has any plausible claims against them. Third, to the extent that plaintiff's position is that Credit One hired third-party vendors to place the allegedly illegal calls that she complains of, the court notes that the arbitration provision would, in fact, appear to apply to those third-party vendors. (Doc. No. 8-2 at 29) ("For purposes of this agreement to arbitrate, . . . 'we' or 'us' includes Credit One Bank, N.A., all of its parents, subsidiaries, affiliates, successors, predecessors, employees, and related persons or entities, *and all third parties who are regarded as agents or representatives of us in connection with the subject matter of the claim or dispute at issue*.") (emphasis added); *see also Pacaldo v. Haliburton Energy Services, Inc.*, No. 1:12-cv-01078-LJO-JLT, 2012 WL 5906653, at *10 (E.D. Cal. Nov. 26, 2012). Finally, "[u]nder the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cone*, 460 U.S. at 20; *see also Bridgetown Trucking, Inc. v. Acatech Solutions, Inc.*, 197 F. Supp.3d 1248, 1262 (D. Ore. 2016) ("The Court finds the existence of an alleged agency relationship between Acatech and the Doe Defendants sufficient to require BTI to arbitrate its claim against the Doe Defendants and sufficient to require the Doe Defendants to be bound by the arbitration agreement.") (and cases cited therein). Thus, even if plaintiff has plausible claims to allege against third-party vendors and even if those third-party vendors were not covered by the arbitration agreement between plaintiff and credit One, plaintiff's dispute with Credit One is still subject to the parties' arbitration agreement and must be arbitrated. *Moses H. Cone*, 460 U.S. at 20.

/////

# CONCLUSION

For the reasons set forth above, the court finds that a valid arbitration agreement exists between the parties and that plaintiff's claims against defendant in this action are covered by the parties' arbitration agreement. Accordingly, defendant's motion to compel arbitration (Doc No. 8) is granted and the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **March 17, 2020**

_____
UNITED STATES DISTRICT JUDGE